IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| DONALD JEFFRIES,<br><br>      Plaintiff,<br><br>  vs.<br><br>FEDEX,<br><br>      Defendant. | Case No. 23-cv-00358-DKW-KJM<br><br>**ORDER GRANTING DEFENDANT FEDERAL EXPRESS CORPORATION'S MOTION FOR SUMMARY JUDGMENT** |

# INTRODUCTION

This matter comes before the Court upon Defendant Federal Express Corporation's (FedEx or Defendant) motion for summary judgment, with the following facts being unopposed.

Because FedEx is a U.S. government contractor, it is required to use the government's "E-Verify" service to ensure that FedEx's employees are authorized to work in the United States. Plaintiff, Donald Jeffries, began working for FedEx on January 13, 2023. The same day, Jeffries filled out an E-Verify form, known as an I-9, and FedEx submitted the same to the government for processing on January 16. The next day, the E-Verify service issued a "Tentative Nonconfirmation" regarding Jeffries, stating that his name and/or birth date "did not match" with the social security number (SSN) he provided. E-Verify provided

Jeffries with one of two options: (1) resolve the mismatch by following stated instructions; or (2) do nothing, which would result in his termination by FedEx. On January 27, 2023, Jeffries checked a box indicating his election of option one. However, rather than follow E-Verify's resolution instructions, Jeffries did (and has still done) nothing to resolve the mismatch. As a result, on February 14, 2023, E-Verify issued a "Final Nonconfirmation" of Jeffries' authorization for employment. On August 14, 2023, after placing Jeffries on paid and then unpaid leave, FedEx terminated Jeffries' employment.

The foregoing undisputed facts resolve all of Jeffries' alleged claims of employment discrimination and retaliation under various federal and/or state laws. Put simply, there are no facts indicating that FedEx discriminated or retaliated against Jeffries due to any protected characteristic or action. Instead, the facts, and allegations in the Second Amended Complaint (SAC) show that Jeffries has not only misapprehended the law, but also failed to follow the clear instructions provided by E-Verify. If he had followed those instructions, perhaps he would still be employed with FedEx. Because he did not, FedEx was expressly permitted − indeed, required − to terminate his employment. Therefore, as more fully discussed below, FedEx's motion for summary judgment, Dkt. No. 105, is GRANTED, and this case is DISMISSED WITH PREJUDICE.

## **FACTUAL BACKGROUND**

The following facts are taken from FedEx's concise statement of undisputed facts (CSF) and supporting exhibits, to which Jeffries did not respond:

Because FedEx ships mail for the U.S. Postal Service, FedEx is required to participate in the U.S. government's E-Verify program to determine the eligibility of new employees to work in the United States. CSF at ¶¶ 1-3, Dkt. No. 106; Decl. of Willie Mae Thompson at ¶¶ 4, 6, Dkt. No. 106-31. In a nutshell, the E-Verify program works by comparing information an employee provides on a "Form I-9" with records held by the Social Security Administration (SSA) and the Department of Homeland Security (DHS). Thompson Decl. at ¶ 7. If everything matches, an employee receives an "Employment Authorized" result, meaning the individual is authorized to work in the United States. *Id.* at ¶ 8. If the information does not match, the individual will receive a "Tentative Non-Confirmation/Mismatch" result, along with a document entitled "Further Action Notice." Among other things, the Further Action Notice identifies the reason for a mismatch and the agency associated with the same. *Id*. When a mismatch is identified, an employer must give the individual an opportunity to resolve the same. *Id*. at ¶ 9. To do so, the individual must, first, make a decision to take action by the end of the tenth federal government working day following issuance

of the mismatch. E-Verify User Manual at § 3.6, https://www.e-verify.gov/e-verify-user-manual-30-case-results/36-final-nonconfirmation, Dkt. No. 106-6. Then, the individual must contact the SSA or the DHS within eight federal government working days. *Id*. If the individual fails to take either action, or the E-Verify program is otherwise unable to confirm employment eligibility, the Tentative Non-Confirmation becomes a "Final Non-Confirmation." *Id*.; Thompson Decl. at ¶ 10. When a Final Non-Confirmation is issued, an employer may terminate the individual's employment with no civil or criminal liability. Thompson Decl. at ¶ 13. Further, an employee may not continue to work at FedEx after receiving a Final Non-Confirmation. *Id*. at ¶ 14.

On January 13, 2023, FedEx hired Jeffries as an international checker. CSF at ¶ 11; Thompson Decl. at ¶ 15. The same day, Jeffries filled out the employee section of Form I-9 and, three days later, a FedEx manager filled out the employer section of the same form and uploaded it to the E-Verify service. CSF at ¶¶ 12-13. On January 17, 2023, E-Verify issued a "Tentative Nonconfirmation", stating that a "mismatch" had occurred between Jeffries' name and/or date of birth and SSA records. E-Verify Further Action Notice (FAN) at 1, Dkt. No. 106-9. Among other further things, the FAN instructed Jeffries to review the personal information contained in Step 1 for accuracy, and, if accurate, then decide either to

4

(1) take action to resolve the mismatch by following additional instructions in the FAN, or (2) take no action, which would mean that "E-Verify will not confirm my work authorization and my employer may terminate my employment." Jeffries was further informed of the need to notify his employer of his decision by January 31, 2023, or face termination of his employment. *Id*.

On January 25, 2023, FedEx managers David Grey and Cindy Fujii met with Jeffries about his need to make one of the two choices provided by E-Verify to resolve his mismatch. Decl. of Cindy Fujii at ¶ 11, Dkt. No. 106-33. Jeffries refused to make a selection or sign the FAN. *Id*. On January 27, 2023, Grey and Fujii again met with Jeffries, informing him that signing the E-Verify form was a condition of employment and, if he refused, he would be placed on paid leave and possibly terminated. *Id*. at ¶ 14. On this occasion, Jeffries signed the FAN and checked the box indicating that he would take action to resolve the mismatch. *Id*. On January 28, 2023, a different FedEx manager, Earl Stagen, provided Jeffries with a "Referral Date Confirmation" from E-Verify, stating that Jeffries had until February 9, 2023 to begin resolving the mismatch and warning that, if Jeffries failed to do so, FedEx may terminate his employment. CSF at ¶ 19; Decl. of Earl Stagen at ¶ 13, Dkt. No. 106-32.

During this time, Jeffries continued to work for FedEx, working from January 13 to February 14, 2023. CSF at ¶ 22; Stagen Decl. at ¶ 14. On February 14, 2023, E-Verify issued a "Final Nonconfirmation" regarding Jeffries, stating that it was unable to confirm Jeffries' authorization for employment. CSF at ¶ 20; E-Verify Final Nonconfirmation at 1, Dkt. No. 106-18. On the same day, FedEx placed Jeffries on paid leave, pending an investigation into his work authorization. CSF at ¶ 21. On February 21, 2023, FedEx placed Jeffries on unpaid leave for 60 days to address his work status. *Id*. at ¶ 23; Decl. of Dave Grey at ¶ 15, Dkt. No. 106-34. In doing so, FedEx mailed Jeffries an "Inter-Office Memorandum", informing him of the need to address his work status with the SSA and warning him that, if he failed to do so, he "may be terminated." Grey Decl. at ¶ 17; 2/21/23 Inter-Office Memorandum from Dave Grey to Don Jeffries, Dkt. No. 106-21.

On May 2, 2023, Jeffries filed a charge of discrimination against FedEx with the Hawaiʻi Civil Rights Commission (HCRC), alleging national origin and race discrimination. Decl. of Craig Lindberg at ¶ 7, Dkt. No. 106-35. On August 14, 2023, FedEx terminated Jeffries' employment due to his failure to resolve his work authorization. CSF at ¶ 26. In fact, there is no evidence that Jeffries has *ever* resolved his authorization to work in the United States. *Id*. at ¶¶ 25, 41.

6

## RELEVANT PROCEDURAL BACKGROUND

On August 28, 2023, Jeffries, proceeding without counsel, initiated this proceeding with the filing of a Complaint. Dkt. No. 1. After filing numerous supplements and amended supplements to the original Complaint, the Court instructed Jeffries to file a single, operative pleading. Dkt. No. 48. On January 25, 2024, Jeffries did so with the filing of the SAC. Dkt. No. 50. Liberally construed, therein, Jeffries raised the following six claims against FedEx: (1) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII); (2) retaliation in violation of Title VII; (3) race discrimination, national origin discrimination, and retaliation in violation of 42 U.S.C. Section 1981; (4) national origin discrimination in violation of 8 U.S.C. Section 1324b; (5) ancestry-based discrimination in violation of Article I, Section 5 of the State of Hawai'i Constitution; and (6) disability discrimination and retaliation in violation of Hawai'i Administrative Rules (HAR) Section 12-46-189.

On August 29, 2024, FedEx moved for summary judgment on all of Jeffries' claims. Dkt. No. 105. At the same time, FedEx filed a concise statement of material facts and exhibits in connection therewith. Dkt. No. 106. Thereafter, the Court scheduled the motion for summary judgment for hearing on October 28, 2024. Dkt. No. 109. Pursuant to Local Rule 7.2, this meant that a response was

7

due by October 7, 2024.  As of the date of this Order, however, Jeffries has yet to respond to the motion for summary judgment in any fashion.  In other words, the motion for summary judgment and the CSF are unopposed.  Pursuant to Local Rule 56.1(g), this means that <u>all</u> of the facts set forth in the CSF are admitted.[1]  On October 14, 2024, FedEx filed a reply in support of its motion, observing Jeffries' failure to respond.  Dkt. No. 118.

To avoid a conflict with the start of a then-scheduled criminal trial in another matter, the Court advanced the hearing on FedEx's motion by a few days to October 24, 2024.  Dkt. No. 120.  The Court further scheduled a status conference for the same date and time.  *Id*.  On October 24, 2024, the Court held the hearing and status conference.  Dkt. No. 121.  Counsel for FedEx appeared.  However, despite delaying the hearing to accommodate even a tardy appearance, Jeffries did not.  In other words, although Jeffries has been provided all of the opportunities to which he is entitled and more to engage in the litigation process in this case, it is clear that he has chosen not to.

---

[1] Similarly, pursuant to Federal Rule of Civil Procedure 36(a)(3), because the 30-day deadline for Jeffries to respond to FedEx's requests for admission (RFAs) has passed without a response, all of the RFAs are also admitted.  Dkt. No. 106-28 at 8 (mailing the RFAs to Jeffries on July 3, 2024); Dkt. No. 106-35 at ¶ 5 (stating that FedEx has not received a response to its RFAs).

The consequences of that inaction now follow in this Order.[2]

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In particular, the movant's "initial responsibility" is to inform the district court of the basis for its motion and to identify those parts of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is then entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Id*. In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

---

[2]Apart from the motion for summary judgment, also pending in this matter is an August 30, 2024 filing from Jeffries titled "Addressing Judicial Misconduct, Willful Blindness, and Violations of Constitutional Rights" (August 30 Filing). Dkt. No. 108. Liberally construed, this appears to be the latest in a series of accusations of bias against the undersigned and the assigned U.S. Magistrate Judge. Those baseless and factually barren accusations have been repeatedly addressed by the Court, Dkt. Nos. 80, 87, and need not be addressed again herein. Therefore, to the extent the August 30 Filing again seeks "independent review" of this case, Dkt. No. 108 at 5, that request is DENIED.

9

# DISCUSSION

The Court first addresses Jeffries' claims of discrimination and, then, his claims of retaliation. For the reasons discussed further below, none of these claims can survive summary judgment because the facts are clear: Jeffries was never discriminated or retaliated against due to any protected characteristic or activity; instead, he was terminated because he could not establish his authorization to work in the United States through E-Verify.

## 1. Discrimination Claims

In Claims 1 and 3-6, Jeffries brings claims of national origin, race, ancestry, and disability discrimination under various federal or state laws. Generally speaking, to establish the same, Jeffries must show that he has been *discriminated* against due to some protected characteristic, such as national origin or race. Jeffries may do this, at least preliminarily, by showing, among other things, that he was qualified for his position and treated differently than similarly situated employees outside of his protected class, *see Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 & n.5 (9th Cir. 2006) (Title VII and Section 1981 claims), *Shoppe v. Gucci Am., Inc.*, 14 P.3d 1049, 1059-60 (Haw. 2000) (applying the Title VII analysis for claims brought under Hawai'i's law prohibiting ancestry discrimination); or that he was a "qualified individual" and discriminated against

because of his disability, *see French v. Haw. Pizza Hut, Inc.*, 99 P.3d 1046, 1051 (Haw. 2004) (adopting the *prima facie* standard for claims under the Americans With Disabilities Act (ADA) for claims under Hawaiʻi's disability discrimination laws); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (claims under the ADA).[3]

Here, there are multiple deficiencies with all of Jeffries' *prima facie* claims. First, Jeffries has failed to show that he was "qualified" for any position at FedEx after he received a Final Nonconfirmation. *See* Thompson Decl. at ¶ 14; *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (stating that, under the ADA, an individual is qualified "if he can perform the essential functions of the job.") (quotation omitted); *Billberry v. City of Los Angeles*, 2011 WL 13177283, at *7 (C.D. Cal. Mar. 22, 2011) (finding that there was no evidence the plaintiff was qualified for a position under Title VII where he was ineligible for employment

---

[3]With respect to Jeffries' claim of national origin discrimination under Section 1324b, FedEx, citing out-of-Circuit law, contends that no private right of action exists thereunder. Dkt. No. 105-1 at 21-23. It is unclear, however, whether such law is applicable in this Circuit. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1073-74 (9th Cir. 2004) (stating that, to establish a violation of Section 1324b, a plaintiff must prove, among other things, "that the employer had a discriminatory intent."). There may, however, be at least one other procedural hurdle facing this claim. *See Zhang v. Office of Chief Admin. Hrg. Officer*, 441 F. App'x 524, 525 (9th Cir. July 6, 2011) (affirming the dismissal for lack of jurisdiction of a Section 1324b claim for national origin discrimination where the claim was covered by Title VII (citing 8 U.S.C. § 1324b(a)(2)(b)). In either event, it is not necessary here to address whether these hurdles bar Jeffries' claim because, even if they do not, as mentioned, Jeffries would still need to prove a discriminatory intent, which as discussed below, he has failed to do.

11

under the defendant's policies); *cf. Thorne v. City of El Segundo*, 726 F.2d 459, 464 (9th Cir. 1983) (citing *Lynn v. Regents of the Univ. of Cal.*, 656 F.2d 1337, 1342 (9th Cir. 1981) for the proposition that an applicant is qualified for a position under Title VII if he meets "objective criteria for [the] job.").

Second, there is no evidence, or even an allegation in the SAC, that FedEx treated Jeffries differently than similarly situated employees not of his national origin, race, or ancestry. In other words, Jeffries does not even contend that FedEx allowed *any* other employee, let alone a similarly situated one, to continue working after receiving a Final Nonconfirmation. *See Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (explaining that, under Title VII, "individuals are similarly situated when they have similar jobs and display similar conduct.").

Third, other than conclusorily asserting in the SAC that he was discriminated against "based on disability", there is no evidence that Jeffries was, in fact, disabled at any point in time, let alone during the period of his hiring and firing at FedEx. For example, Jeffries has never even alleged, or otherwise identified, the nature of his purported disability, much less that FedEx was aware of it or took any adverse action because of it.

Thus, Jeffries has no *prima facie* discrimination claim to pursue. Even if he did, though, FedEx has established a legitimate, non-discriminatory reason for

12

Jeffries' termination: his receipt of a Final Nonconfirmation from E-Verify, and his failure to remedy the same. CSF at ¶ 26. This means that Jeffries must show that FedEx's non-discriminatory reason for terminating him was pretextual. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001) (explaining that, if a plaintiff establishes a *prima facie* case and an employer provides a non-discriminatory reason for its conduct, the analysis for ADA and Title VII claims is the same: a plaintiff must establish the reason was pretextual).

Jeffries can do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. at 1093-94. Here, Jeffries has not come close. Notably, all of the undisputed evidence reflects that there is one, and only one, clear reason for why Jeffries no longer works at FedEx: his receipt of a Final Nonconfirmation from E-Verify, and his failure to remedy the same. Put another way, there is no evidence of any other reason, discriminatory or not. Moreover, the misguided nature of this lawsuit is evident even in the allegations of the SAC. Therein, Jeffries' protestations of discrimination boil down to this: FedEx must have discriminated against him because he "holds a Real ID-compliant State ID" and, thus, his work eligibility cannot be challenged. SAC at

13

10 (¶ 12).[4] That, however, is not how the E-Verify system works. Rather, while Jeffries must present documents, one of which may be a "Real ID-compliant State ID", in connection with filling out a Form I-9, it is the information inputted into Form I-9 that E-Verify compares with records available to the SSA and/or DHS. *See* CSF at ¶ 4; Dkt. No. 106-3 at 1. Irrespective of the documentation used, if that information produces a mismatch, a Tentative Nonconfirmation is issued. Thompson Decl. at ¶¶ 7-8; Dkt. No. 106-3 at 1. In other words, simply because Jeffries holds a "Real ID-compliant State ID" does not mean that the information provided on Form 1-9 would not produce a mismatch or that he would be otherwise authorized to work in the United States through E-Verify. Jeffries' belief−that he has "effectively dismantle[d] challenges to his work eligibility"−is therefore wrong.

For all these reasons, Jeffries' claims of discrimination are meritless, and FedEx is entitled to summary judgment.

### 2. **Retaliation Claims**

The analysis is much the same with respect to Jeffries' retaliation claims. In Claims 2, 3, and 6, Jeffries alleges that he was retaliated against in violation of Title VII, Section 1981, and Hawaiʻi disability-discrimination law. To

---

[4] In citing to pages of the SAC, the Court relies upon the page numbers assigned in the top, right corner of the filing, *i.e.*, "Page 10 of 23."

preliminarily establish these claims, he must show (1) a protected activity, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1107-08 (9th Cir. 2008) (Title VII and Section 1981); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (ADA).

Here, the only protected activity reflected in the evidence is Jeffries filing a charge of discrimination against FedEx with the HCRC on May 2, 2023.[5] The evidence also reflects the following adverse employment actions: (1) Jeffries being placed on leave with pay on February 14, 2023; (2) Jeffries being placed on leave without pay on February 21, 2023; and (3) Jeffries' termination on August 14, 2023. As for the first two actions, they both occurred long *before* the filing of the HCRC charge. Therefore, there could be no causal link between them. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (explaining that an adverse action must occur "fairly soon *after* the employee's protected expression.") (quotations omitted, emphasis added). As for the latter, the Court *assumes,* for the instant purposes of establishing Jeffries' *prima facie*

---

[5]The Court notes, however, that the Charge of Discrimination alleged only national origin and race discrimination. Lindberg Decl. at ¶ 7; 5/2/23 Charge of Discrimination, Dkt. No. 106-30. Therefore, it seems very doubtful that a retaliation claim premised upon *disability* could be established here, given that Jeffries did not make such a claim in his Charge of Discrimination.

15

case, that the filing of his HCRC charge was causally linked to his termination. *Cf. id*. (finding an 18-month lapse to be "simply too long" by itself to give rise to an inference of causation).

Like Jeffries' discrimination claims, FedEx may then show a legitimate, non-discriminatory reason for terminating Jeffries. *See Surrell*, 518 F.3d at 1108; *Curley v. City of Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014) (ADA). As discussed earlier, FedEx has done this: Jeffries was terminated because of his failure to remedy the Tentative Nonconfirmation he received from E-Verify, which consequently became a Final Nonconfirmation. Therefore, once again, the burden shifts to Jeffries to show that FedEx's reason was pretextual. *See Surrell*, 518 F.3d at 1108; *Curley*, 772 F.3d at 632.

And once again, Jeffries has not come close to establishing pretext. At most, the only thing on Jeffries' side of the scale is the three-month gap between the filing of the HCRC charge and his firing. That alone, however, particularly at the pretext-stage, is insufficient. *See Curley*, 772 F.3d at 634. On FedEx's side of the scale is the overwhelming fact that, long *before* Jeffries filed the HCRC charge, he had received both a Tentative and Final Nonconfirmation from E-Verify, FedEx had placed him on leave, directed him to resolve the E-Verify mismatch, and told him that, should he fail to do so, he may be terminated. It

16

should, therefore, come as no surprise that Jeffries was eventually terminated when he failed to do that which he had been clearly directed. The fact that his termination may have come a few months after filing a charge with the HCRC does not change this in the slightest. *See id*.

For all these reasons, Jeffries' claims of retaliation are meritless, and FedEx is entitled to summary judgment.

## **CONCLUSION**

For the reasons set forth herein, the motion for summary judgment, Dkt. No. 105, is GRANTED, and this case is DISMISSED WITH PREJUDICE.

The Clerk is instructed to enter Judgment in favor of Defendant Federal Express Corporation.

IT IS SO ORDERED.

DATED: November 1, 2024 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge